Magistrate Judge Michelle L. Peterson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>AHMON HOGG, and<br><br>SETH COLES-BODY,<br><br>Defendants. | CASE NO.    MJ25-394<br><br>COMPLAINT for VIOLATION<br><br>Title 18, U.S.C.<br>Sections 371 & 2113<br>(Conspiracy to Commit Bank Robbery)<br><br>**(FILED UNDER SEAL)** |

BEFORE, MICHELLE L. PETERSON, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT ONE

### Conspiracy to Commit Robbery

Beginning at a time unknown, and continuing until on or after March 7, 2025, in King and Clark Counties, within the Western District of Washington, AHMON HOGG

Complaint - 1
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and SETH COLES-BODY, and others known and unknown, did knowingly and willfully conspire, combine, confederate, and agree to commit offenses against the United States, that is to take from the person and presence of another, by force, violence and intimidation, money belonging to a bank or credit union, the deposits of which were federally insured by the Federal Deposit Insurance Corporation and the National Credit Union Administration, in violation of Title 18, United States Code, Section 2113(a).

During and in furtherance of the conspiracy, within the Western District of Washington, one or more of the conspirators committed the following overt acts, among others:

On or about December 23, 2024, one or more coconspirators, used a glue-like substance to intentionally disable a Bank of America automated teller machine (ATM) located at 17250 140th Avenue SE, Renton, Washington.

On or about December 23, 2024, HOGG and one or more coconspirators, grabbed an ATM technician from behind and held a screwdriver to his throat while the technician was repairing the disabled Bank of America ATM located at 17250 140th Avenue SE, Renton, Washington.

On or about December 24, 2024, HOGG and COLES-BODY, and one or more coconspirators, used a glue-like substance to intentionally disable a Bank of America ATM located at 13411 SE Mill Plain Blvd., Vancouver, Washington.

On or about December 24, 2024, HOGG and COLES-BODY, and one or more coconspirators, shoved an ATM technician who was repairing the disabled Bank of America ATM located at 13411 SE Mill Plain Blvd., Vancouver, Washington.

On or about December 24, 2024, HOGG and COLES-BODY, and one or more coconspirators, stole five cash cassettes while a technician was repairing the disabled Bank of America ATM located at 13411 SE Mill Plain Blvd., Vancouver, Washington.

Complaint - 2
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On or about December 24, 2024, HOGG and COLES-BODY, used a glue-like substance to intentionally disable a Bank of America ATM located at 2500 W. Main Street, Battle Ground, Washington.

On or about, March 6, 2025, HOGG and COLES-BODY, used a glue-like substance to intentionally disable a Bank of America ATM located at 7450 170 Avenue NE, Redmond, Washington.

On or about March 7, 2025, HOGG and COLES-BODY, while wearing masks, approached an ATM technician and intimidated him into walking away while the technician was repairing the disabled Bank of American ATM located at 7450 170 Avenue NE, Redmond, Washington.

On or about March 7, 2025, HOGG and COLES-BODY, stole five cash cassettes while a technician was repairing the disabled Bank of American ATM located at 7450 170 Avenue NE, Redmond, Washington.

All in violation of Title 18, United States Code, Section 371.

And the complainant states that this Complaint is based on the following

I, Nicholas Myers, being first duly sworn on oath, depose and say:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed with the FBI since August of 2016. Since becoming a Special Agent, I have received specialized training from the FBI, to include completing the 21-week New Agent Training course at the FBI Academy in Quantico, Virginia. I am currently assigned to the Seattle Field Division at the Vancouver office where I am a member of the Columbia River Organized Crime Task Force. In this capacity, I investigate, inter alia, organized crime, drug trafficking, firearms offenses, bank robberies, and related violations. In my role as a Special Agent for the FBI, I have participated in many aspects of investigations, including conducting physical surveillance, managing confidential sources, interviewing witnesses, and executing

Complaint - 3
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

search warrants. Through these investigations, I have become familiar with methods and techniques used by individuals committing violent crimes, such as bank robberies. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). As such, I am empowered to investigate, and to make arrests for, violations of federal criminal statutes, including those found in Title 18 and 21 of the United States Code.

2.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause to believe that Defendants committed the crime set forth herein, this document does not contain all my knowledge of the larger investigation.

3.      This affidavit is made in support of a criminal complaint against **AHMON HOGG** and **SETH COLES-BODY** for the offense of Conspiracy to Commit Bank Robbery, in violation of Title 18 U.S.C. Sections 371 and 2113(a).

### SUMMARY OF PROBABLE CAUSE

4.      The FBI, along with other police agencies, is investigating a series of robberies of bank automated teller machines ("ATMs") that have occurred within the Western District of Washington and elsewhere. I know from my training and experience, and also from law enforcement's discussion with bank employees in this investigation, that the victim bank and/or credit union institutions discussed below are all federally insured by either the Federal Deposit Insurance Corporation ("FDIC") or the National Credit Union Administration ("NCUA").

Complaint - 4
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.      These ATM robberies have been committed by **AHMON HOGG, SETH COLES-BODY**, and other identified and unidentified suspects. A similar Modus Operandi (M.O.) has been used across the incidents. The suspects often intentionally induce a malfunction at the ATM and wait for the service technician to arrive. They then either commit the robbery at that ATM or follow the technician to another ATM service call. The suspects wait until an ATM service technician arrives at an ATM and opens the ATM to perform service. The suspects then drive up in a vehicle, exit the vehicle, verbally demand the technician get out of the way or otherwise threaten the technician, and then grab the cash dispensing cassettes from the ATM before fleeing the area. During the incidents, the suspects have worn various forms of gloves, masks, hoodies, and other clothing to hide their faces and identities. Vehicles used by the suspects often have a fictitious or stolen license plate attached. Through investigation it is known that suspects use additional vehicles as lookouts, which often follow the ATM technicians between service calls but not approach the ATM, allowing the waiting subjects to do the robbery of the technician.

6.      Based on previous experience with investigations of ATM robbery and burglary incidents, I am aware that historically it has been common for the suspects to have connections to, or reside in or around, the Houston, Texas area. These suspects travel throughout the United States committing ATM robberies before returning to the Houston, Texas area.

7.      Through investigation and sharing of information between law enforcement agencies, I am aware of the following ATM bank robbery incidents in which **HOGG** and **COLES-BODY** are the investigative subjects.

### *December 23, 2024 Attempted Bank Robbery In Renton, Washington*

8.      In the morning hours on December 23, 2024, an ATM repair technician was dispatched to a service call at the Bank of America located at 17250 140th Avenue SE,

Complaint - 5
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Renton, Washington. The ATM had been intentionally disabled by a glue-like substance that caused the ATM card reader to no longer function.

9.      At approximately 9:42 a.m. on December 23, 2024, as the technician worked to repair the disabled ATM, a silver Volvo S60 bearing a temporary license plate number approached. Two male subjects, Subject 1 and Subject 2, exited the vehicle and approached the victim technician. A third unknown individual, Subject 3, was in the driver's seat of the Volvo S60. As Subject 2 approached the victim technician, he took a screwdriver from the victim and held it to the victim's throat. Subject 2 demanded the victim open the ATM or he would kill him. The victim technician was unable to open the ATM and, after a scuffle, escaped. Subject 1 and Subject 2 returned to the Volvo S60 and fled the area. The following is a still image obtained from the Bank of America surveillance camera which captured footage of the Volvo.



10.     The subjects were described by witnesses and shown in surveillance video as: Subject 1: Black male, wearing black pants, a black hooded sweatshirt, blue/gray gloves, a white balaclava, and purple high-top shoes; Subject 2: Black male, wearing black pants, a tan hooded sweatshirt, gloves, a gray balaclava and white shoes. Subject 3: unknown description. The following is a still image obtained from the Bank of America surveillance camera which captured the incident in Renton, Washington.

Complaint - 6
*United States v. Hogg, et al.*



***December 24, 2024 Bank Robbery In Vancouver, Washington***

11.     In the morning hours of December 24, 2024, an ATM repair technician was dispatched to repair an ATM at the Bank of America located at 13411 SE Mill Plain Blvd, Vancouver, Washington. The ATM had been intentionally disabled by a glue-like substance that caused the ATM card reader to no longer function. When the victim technician arrived to repair the disabled ATM, she noticed the cash dispenser on the ATM was jammed and opened the safe to perform the repair. At approximately 8:46 a.m., as the victim technician was making repairs to the ATM, a silver Volvo S60 bearing a temporary license plate number, pulled into the ATM drive-thru area of the Bank of America. Two male suspects exited the rear passenger-side and rear driver-side doors of the Volvo S60. Subject 1 and Subject 2 approached the victim technician and pushed her out of the way. Subject 1 and Subject 2 stole five cash cassettes from the opened safe of the ATM. Both subjects returned to the Volvo S60 and fled the area. According to Bank of America, the approximate cash loss from this robbery was $383,900.00 in U.S. currency.

12.     The subjects were described by witnesses and shown in surveillance video as: Subject 1: Black male, wearing black pants, a black hooded sweatshirt, blue/gray gloves, a white balaclava, and purple high-top shoes; Subject 2: Black male, wearing black pants, a tan hooded sweatshirt, gloves, a gray balaclava and white shoes. The

Complaint - 7
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

following is a still image obtained from the Bank of America surveillance camera which captured the incident.



13.    Investigators noted the two male subjects were dressed in similar clothing as that worn in the attempted bank ATM robbery on December 23, 2024, in Renton, Washington. Also, the suspect vehicle used on December 24th in Vancouver, Washington matched the description of the suspect vehicle used in the attempted robbery on December 23rd in Renton, Washington.

14.    During the investigation into these robberies, Vancouver Police Department ("VPD") detectives were notified that a Bank of America ATM located at 2500 W Main Street, in Battle Ground, Washington, was damaged on December 24, 2024, in a similar manner to the ATMs in Renton and Vancouver. The Battle Ground ATM was located approximately 15.6 miles from the Bank of America ATM in Vancouver, Washington.

15.    Review of bank surveillance video from the Bank of America in Battle Ground revealed an individual, dressed in similar clothing to one of the unknown subjects involved in the December 23 and 24 incidents described above. The subject disabled the bank ATM at approximately 1:46 a.m. The subject was driving a vehicle with a description and appearance similar to the Volvo S60 used in the Renton and Vancouver ATM incidents described above. The following is a still image obtained from the Bank of America surveillance camera in Battle Ground, Washington which captured the disabling of the ATM.

Complaint - 8
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



### *Incidents on January 3, 2025 in Phoenix, Arizona*

16.    On the morning of January 3, 2025, investigators with the FBI Phoenix's Violent Crimes Task Force ("VCTF") were notified about a 12:38 a.m. service call reporting a card reader malfunction for a bank ATM located at Bank of America, 13780 West Waddell Road, Surprise, Arizona 85379. At approximately 7:30 a.m., a service technician arrived at this ATM and immediately noticed there was a card jammed into the card reader. The FBI was called to the scene.

17.    Bank surveillance cameras captured the tampering activity and showed a dark colored smaller SUV (Subject Vehicle) arrive at the drive-thru ATM in the early morning hours of January 3, 2025. The driver was a Black male individual wearing a dark or black colored hooded sweatshirt with the hood pulled up, dark sunglasses, dark colored work gloves, and a light colored or white face covering which was initially covering his lower face. At some point, the face covering was moved down to the suspect's chin exposing the suspect's nose and mouth area. This suspect used a screwdriver to jam what appeared to be a debit-style card covered in a white substance into the card reader of the ATM. The following are still images obtained from the Bank of America surveillance video which captured the incident.

Complaint - 9
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

 

18.    While speaking with the technician at the Bank of America, the FBI investigator learned the technician also had a pending service call to an ATM malfunction at a Wells Fargo Bank located at 9928 West Bell Road, Sun City, Arizona 85351. Upon learning this information, the FBI responded to that Wells Fargo Bank to assess the situation.

19.    An FBI investigator arrived to the Wells Fargo Bank on West Bell Road the and confirmed the drive-thru ATM had been tampered with as it looked like there was a glue or adhesive substance in the area where the card is inserted. The investigator positioned his vehicle in the parking lot to conduct surveillance. This investigator was made aware of the description of the vehicle used in the Bank of America incident.

20.    Bank surveillance video captured the ATM tampering activity at the Wells Fargo at 12:15 a.m. on the morning of January 3, 2025. A dark colored smaller size Mazda SUV or crossover style vehicle pulled up to the ATM in the drive-thru lane. The driver was a Black male individual wearing a dark or black colored hooded sweatshirt with the hood pulled up, dark sunglasses, dark colored gloves, and a white or light-colored balaclava style face covering which covered the hair, forehead, nose and mouth areas. This suspect used a screwdriver to jam something into the card reader of the ATM. The following are still images obtained from the Wells Fargo Bank surveillance video which captured the incident.

Complaint - 10
*United States v. Hogg, et al.*

 

21.     Of note, the two tampering incidents at the Arizona Bank of America and Wells Fargo occurred approximately 20 minutes apart and the locations are approximately 7 miles apart.

### Law Enforcement Surveillance at Phoenix Wells Fargo Bank

22.     At approximately 10:20 a.m. on January 3, 2025, the FBI investigator conducting surveillance at the Wells Fargo Bank observed the Subject Vehicle arrive at the Wells Fargo Bank, drive through the ATM lane, and then back into a parking spot just north of the ATM drive-thru exit. From where the Subject Vehicle was parked it had a direct view of the Wells Fargo Bank ATM and drive-thru lane. After it backed into the parking spot, no one exited the vehicle.

23.     The investigator observed the driver was a Black male and there was no other person in the front passenger seat. However, the investigator observed there were additional individuals in the rear passenger seat.

24.     Based on training and experience, to include involvement in and conducting multiple investigations into ATM robberies involving the same M.O., investigators determined it was reasonable to believe a bank robbery was imminent. This was based on the following facts. The fact the Subject Vehicle, to include the license plate, was captured on surveillance video at both the Wells Fargo Bank and the Bank of America while the driver used a screwdriver to tamper with the ATM card reader. The

Complaint - 11
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fact the Subject Vehicle was driven by the same Black male at both banks wearing clothing consistent with efforts to hide one's identity, that is gloves, face covering, hooded sweatshirt, face covering, and dark sunglasses at night. The fact when the service technician completed the repair at the Bank of America ATM, a card with a sticky glue-like substance was found to have been jammed into the ATM card reader. The fact the license plate observed on the Subject Vehicle in the bank surveillance was not assigned to that vehicle, based on LPR and database checks. The fact that prior to the ATM technician arriving at the Wells Fargo Bank, the Subject Vehicle was observed by law enforcement arriving at the bank, driving by the tampered ATM and then backing into a parking spot with a direct view of the ATM, where it waited with no one exiting the Subject Vehicle, despite occupants being observed in the rear passenger seat, consistent with an effort to not be seen in the vehicle. The fact that in other ATM robberies using this M.O. it is common for the subjects to exit the rear passenger seat of the vehicle and run up to the ATM and service technician, while the driver stays in the vehicle to allow a quick getaway. The fact that investigators know ATM robbery subjects will also use additional vehicles as lookouts which will follow the ATM technician between service calls and not approach the ATM, allowing the waiting subjects to do the robbery of the technician.

25.    Based on these facts, FBI investigators enlisted the assistance of Maricopa County Sheriff's Office (MCSO) deputies to conduct a traffic stop on the Subject Vehicle.

### January 3, 2025, Phoenix Traffic Stop Conducted

26.    At approximately 11:00 a.m. MCSO deputies conducted a traffic stop of the subject vehicle.

27.    During the traffic stop, MCSO deputies detained three unidentified Black male occupants of Subject Vehicle. Of note was the fact one male was driving the vehicle while the other two passengers were sitting in the backseat row of the Subject Vehicle. It

Complaint - 12
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was also noted that the driver's seatbelt was fastened in such a way that he was sitting on top of it, which would be consistent with allowing quick and easy egress and ingress to the vehicle, while avoiding the indicator noise when a seatbelt was not fastened.

28.     The three individuals were taken into custody and subsequently transported to the Peoria Police Department in Arizona to be interviewed. At the Peoria Police Department, an FBI investigator used a government issued mobile biometrics application to identify the subjects. After fingerprinting the subjects, a response was received identifying the individuals. An additional query of the Texas Department of Motor Vehicles and criminal history checks were run based on the response from the mobile biometrics application and confirmed the identities of the three the individuals.

29.     The vehicle occupants were identified as:

- Driver: **Ahmon HOGG JR.**, date of birth XX/XX/2003, a Black male, with a listed address in Humble, Texas.

- Passenger 1: Clay Charles BALDWIN, date of birth XX/XX/2001, a Black male, with a listed address in Rosharon, Texas.

- Passenger 2: **Seth COLES-BODY**, also known as Seth Coles, Seth Body, and Seth Body-Coles, date of birth XX/XX/2002, a Black male, with a listed address in Houston, Texas.

30.     At the time of the traffic stop **HOGG** (the driver) was in possession of a silver/gray iPhone in a clear case ("Phone-2"). **HOGG** stated he had an additional cellphone inside the vehicle and requested it be brought with him to the police station. Based on **HOGG's** request, investigators retrieved a black iPhone in a black and white Speck phone case ("Phone-1"), which was located on the center console of Subject Vehicle, and it accompanied HOGG to the police station.

31.     At the time of the traffic stop, BALDWIN had a purple iPhone with a mirrored screen ("Phone-3") in his possession. **COLES-BODY** had a red iPhone in a black phone case ("Phone-4") in his possession.

Complaint - 13
*United States v. Hogg, et al.*

32. After conducting the traffic stop, investigators were able to determine that the license plate on the Subject Vehicle was assigned to a black 2024 Mazda CX-50 registered to Enterprise Rent a Car.

33. Investigators observed the following items of interest in plain view inside Subject Vehicle:

- Texas license plate TMF0834;
- a dark colored "Hyper Tough" brand glove;
- the hangtag for Hyper Tough heavy-duty impact gloves;
- black clothing stuffed in a duffel bag;
- additional black gloves;
- a piece of white clothing.

34. Investigators noted in the bank surveillance images, when the Black male driver tampered with the ATM, he was wearing "Hyper Tough" brand gloves, which matched a glove observed in the Subject Vehicle.

35. Investigators noted **HOGG** had facial physical characteristics similar to those of the Black male captured on bank surveillance video tampering with the ATM.

### *Interviews of HOGG, BALDWIN, and COLES-BODY.*

36. **HOGG**, BALDWIN, and **COLES-BODY** were separately interviewed at the Peoria Police Department by FBI investigators.

37. **HOGG** provided the following telephone numbers and email address as contact information: (312) 622-0907 ("Target Telephone-1") and (713) 440-9196 ("Target Telephone-2). AT&T was identified as the carrier service provider for Target Telephone-1. Verizon was identified as the carrier service provider for Target Telephone-2.

38. BALDWIN provided (832) 336-1489 ("Target Telephone-3") and email address claybaldwin14@gmail.com as contact information. Verizon was identified as the carrier service provider for Target Telephone-3.

Complaint - 14
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

39. **COLES-BODY** provided (713) 515-8813 and ("Target Telephone-4") as contact information. AT&T was identified as the carrier service provider for Target Telephone-4.

40. Using a government issued phone, an FBI investigator called Target Telephone-1, Target Telephone-2, Target Telephone-3, and Target Telephone-4. The FBI investigator observed the government phone number appear as an incoming call on the screens of Phone-1, Phone-2, Phone-3, and Phone-4, respectively.

41. After obtaining biographical information and prior to the interview, each individual was read his Miranda Warnings and advised of his rights. **HOGG**, BALDWIN, and **COLES-BODY** individually acknowledged their rights and agreed to be interviewed by investigators.

42. During the various interviews, **HOGG**, BALDWIN, and **COLES-BODY** said they traveled together from Texas to Arizona, claiming to have arrived in the Phoenix area on or about the late night of January 2, 2025, into the early morning of January 3, 2025.

43. **HOGG** said he traveled to Arizona from Texas with BALDWIN and **COLES-BODY** in Subject Vehicle, and no one else was with them. **HOGG** said they were staying in an Airbnb rental but did not provide a location.

44. **COLES-BODY** said he traveled to Arizona in Subject Vehicle with **HOGG** and BALDWIN. He denied other vehicles accompanying them on the drive. **COLES-BODY** denied riding in a separate vehicle from Texas to Arizona.

45. BALDWIN said that along with Subject Vehicle, a silver Chevy Malibu accompanied the group from Texas to Arizona. BALDWIN and **COLES-BODY** traveled together in that Chevy Malibu.

46. **HOGG**, BALDWIN, and **COLES-BODY** did not provide the location for where they stayed the night. According to **COLES-BODY**, he slept in Subject Vehicle while **HOGG** and BALDWIN stayed inside, he presumed with friends.

Complaint - 15
*United States v. Hogg, et al.*

47.    **HOGG**, BALDWIN, and **COLES-BODY** each claimed not to know who rented Subject Vehicle.

48.    Interviewers informed **HOGG** a female had approached an FBI investigator after the vehicle stop, advising the vehicle had been rented by her, and commenting to the investigator the vehicle was stolen. **HOGG** denied knowing the identity of that female.

49.    From their interviews, neither **HOGG**, BALDWIN, nor **COLES-BODY** could provide a plausible explanation as to why Subject Vehicle had been parked near the Wells Fargo Bank ATM.

50.    **HOGG**, BALDWIN, and **COLES-BODY** all denied tampering with the **ATM**.

51.    FBI investigators seized Phone-1, Phone-2, Phone-3, and Phone-4. These cellphone devices are currently in the FBI's possession.

52.    Following the interviews, **HOGG**, BALDWIN, and **COLES-BODY** were released from custody and allowed to leave the Peoria Police station.

### *Search of Subject Vehicle*

53.    On January 5, 2025, federal search warrant 25-8017MB was issued in the District of Arizona authorizing law enforcement to search Subject Vehicle. During the search of Subject Vehicle multiple items of evidentiary value and investigative interest were identified. Among those items were the following:

- tube of Gorilla brand waterproof caulk, white in color
- screwdriver with a white substance on it
- quantity 16 debit cards still in packaging
- Hyper Tough gloves with a white residue on them
- multiple pairs of gloves
- white balaclava
- gray balaclava

Complaint - 16
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- multiple black hooded sweatshirt

- duffle bag with $1010 in U.S. currency

- empty box for an AT&T Wi-Fi hotspot with IMEI 864747071505490 on the label

### *Cell Tower Search – State of Washington*

54.    On January 8, 2025, investigators in Washington obtained a search warrant, issued by the Clark County Superior Court, authorizing law enforcement to obtain cell tower information and wireless transactional access records associated with cellular towers providing coverage to the geographic area for specified time periods covering the: Renton attempted robbery (12/23/2024), Vancouver ATM disabling (12/24/2024), Battle Ground ATM disabling (12/24/2024), and Vancouver successful robbery (12/24/2024).

55.    Review of the wireless transactional access records provided by AT&T revealed Target Telephone-1 (**HOGG's** telephone number) was found within the records of all four Washington locations at the same date and time of the above-described events.

56.    Review of the wireless transactional access records provided by AT&T revealed Target Telephone-4 (**COLES-BODY's** phone number) was found within the records of three locations: the Vancouver ATM disabling, Battle Ground ATM disabling, and Vancouver successful robbery at the date and time each event occurred.

### *Search of Cellphones*

57.    On January 5, 2025, federal search warrant 25-8018MB was issued in the District of Arizona authorization law enforcement to search and perform digital forensic extractions of the information on cellphone devices that were in possession of **HOGG** and **COLES-BODY** during their Phoenix traffic stop from January 3, 2025, described above.

58.    Content on those devices provide further evidence that **HOGG** and **COLES-BODY** committed the December 23, 2024, attempted robbery in Renton, Washington and the December 24, 2024, robbery in Vancouver, Washington.

Complaint - 17
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

59. For instance, device location metadata, along with photos, and videos on Phone-2 (**HOGG**'s device) revealed travel activity consistent with travel from Texas to Washington consistent with the timeframe of the December 2024 Washington ATM robberies. Phone-2 also contained photos and videos taken on or shortly after December 24, 2024, depicting **HOGG, COLES-BODY**, and at least one other unidentified male with large amounts of U.S. currency consistent with the amount of money stolen during the December 24, 2024, ATM robbery in Vancouver. Phone-2 also included photos and/or screenshots listing addresses of multiple bank locations in Arizona, including the Bank of America located at 13780 West Waddell Road, Surprise, Arizona.

60. A review of Phone-4 (**COLES-BODY**'s device) revealed device location metadata consistent with travel from Texas to the State of Washington around the timeframe of the December 2024 Washington ATM robberies. Phone-4 also contained photos and video taken on or shortly after December 24, 2024, depicting **HOGG** and **COLES-BODY** with large amounts of U.S. currency, consistent with the amount of money stolen during the December 24, 2024, ATM robbery in Vancouver, Washington.

### *March 7, 2025 Bank Robbery in Redmond, Washington*

61. On March 7, 2025, police officers with the Redmond Police Department were dispatched to the Bank of America located at 7450 170 Avenue NE, Redmond, Washington after receiving a report of a robbery that had just occurred.

62. Upon arrival at the bank, police officers encountered the ATM technician who reported the robbery. The technician told the responding officers that the Bank of America ATM had gone out of service at approximately 9:38 p.m., on March 6, 2025. The technician arrived to repair the disabled ATM at approximately 11 a.m., on March 7, 2025. The technician noted that the ATM card reader had been glued shut. To make the repairs to the ATM, the technician opened the ATM safe. As the technician was working to make the repairs, two male subjects approached from the east and took several cash cassettes from the opened ATM. The subjects departed in a silver vehicle.

Complaint - 18
*United States v. Hogg, et al.*

63. After interviewing the ATM technician, police officers obtained video surveillance of the subjects from the Redmond Bank of America. The subjects were observed on surveillance video as: Subject 1: dark-skinned male, wearing blue pants, a gray hooded sweatshirt, black/gray gloves, a black balaclava, and black and white high-top shoes; Subject 2: Black male, wearing black pants, a red or orange hooded sweatshirt, gray gloves, a black facemask, and black and white shoes. The following are still images obtained from the Bank of America surveillance video which captured the incident.

 

64. At approximately 3:03 PM, the ATM technician called one of the responding police officers and reported that he observed the ATM cassettes on the side of the road on SR520 west bound. The technician told officers that the ATM cassettes appeared to be opened and spread between the Redmond Way on ramp to SR520 and the NE 51 ST SR520 off ramp on the left side of the highway.

65. Multiple police officers responded to the location where the ATM cassettes were reported to be located and recovered five damaged ATM cassette cash boxes, multiple small plastic pieces which appeared to have broken off the cassette boxes, and a red hoodie with "hustle" written across the front and left shoulder. Police officers further examined the red hoodie and found multiple strands of hair. The above listed items placed into evidence by officers and the hoodie submitted to the Washington State Patrol (WSP) Seattle Crime Laboratory for DNA analysis.

Complaint - 19
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

66.    On March 12, 2025, a Bank of America Protective Services Manager provided Redmond Police with a total loss amount of $221,000 from the March 7, 2025 ATM robbery.

67.    On May 1, 2025, the WSP Seattle Crime Laboratory provided investigators with a Crime Laboratory Report documenting the DNA analysis conducted on the red hoodie seized on March 7, 2025. A WSP Forensic Scientist took two samples from the red hoodie, one from the right sleeve cuff and the second from the collar. The DNA sample taken from the sleeve cuff returned a match to **SETH COLES-BODY**. The DNA sample taken from the collar returned a match to AHMON **HOGG**.

### *Border Patrol Checkpoint Encounter of COLES-BODY on March 10, 2025*

68.    On March 10, 2025, United States Border Patrol Agents (BPA) along with department canine "Zeus" were assigned checkpoint duties at the Sierra Blanca United States Border Patrol (USBP) Checkpoint near Sierra Blanca, Texas.

69.    At approximately 3:25 p.m., a Greyhound bus entered the primary inspection lane of the checkpoint for an immigration inspection of its passengers. BPAs boarded the bus and identified themselves as BPAs and proceeded to question all passengers individually regarding their nationality and citizenship. A BPA then began conducting free air sniffs with canine Zeus of the luggage located in the bus's lower luggage compartment. At that time, the BPA noticed Zeus alert and indicate to the upper seams of the luggage bins/lower seams of the passenger compartment for the presence of concealed humans and/or the odors of controlled substances. The BPA did not notice Zeus alert to any of the luggage that was located in the bin.

70.    As the BPA was conducting immigration inspections, he encountered an adult male subject, later identified as **COLES-BODY**, who was sitting on the left side of the bus, third row towards the back by the restroom. The BPA questioned **COLES-BODY** about his citizenship and his carry-on luggage. **COLES-BODY** stated he was a citizen of the United States. The BPA proceeded to question **COLES-BODY** if the blue

Complaint - 20
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

backpack that was located in the upper storage compartment area above him was his. **COLES-BODY** stated that the blue backpack was not his. The BPA then asked several times to the other passengers on the Greyhound bus if the bag belonged to anybody, to which nobody claimed ownership to. At that point, a BPA proceeded to take the bag off the bus to be inspected by the canine unit in the lower luggage bin. The BPA noticed canine Zeus alert and indicated to the blue backpack. As the backpack was being inspected, **COLES-BODY** then stated to a BPA the bag belonged to him. A BPA then proceeded to search the backpack due to the K9 alert and observed several large bundles of cash. The bundles of cash had the consistencies of that of proceeds of illicit activities. The bundles were separated by denominations of 10- dollar bills, 20-dollar bills and 100-dollar bills.

71.    The BPA questioned **COLES-BODY** as to why he was in possession of that amount of money, to which he stated, "I don't know, is it bad to have that kind of money?" Due to canine Zeus' initial alert of the upper seams of the lower luggage bin, a BPA then requested that all the subjects exit the bus to perform a canine sniff of the passenger compartment. The BPA then noticed canine Zeus alert and indicate to the vicinity of another green backpack located in the upper storage compartment near the back of the bus. A BPA then proceeded to search the backpack and observed several large bundles of cash. The bundles of cash had the consistencies of that of proceeds of illicit activities. The BPA also located a jar containing a green leafy substance which later field tested positive for the properties and characteristics of marijuana utilizing NIK test kit E. The BPA then asked all the passengers of the bus if the bag belonged to anyone. **COLES-BODY** stated that the backpack also belonged to him. **COLES-BODY** was escorted inside the checkpoint for possession of a controlled substance and for further investigation. A BPA read **COLES-BODY** his Miranda Rights. **COLES-BODY** stated that he understood and was not willing to answer any questions.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

72.    In the evening hours of March 10, 2025, DEA investigators arrived at the Sierra Blanca Checkpoint and met with **COLES-BODY**. Investigators obtained basic biographical information from **COLES-BODY** during that time he stated he was not employed. The DEA investigators provided **COLES-BODY** with his Miranda warnings, and he indicated he was not willing to speak with law enforcement without the presence of an attorney. DEA investigators seized the U.S. currency and the Marijuana and transported to the El paso Division office.

73.    On March 13, 2025, DEA investigators transported the undetermined amount of U.S. Currency to Loomis for an official count which was determined to be $209,850.00.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Complaint - 22
*United States v. Hogg, et al.*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on the above facts, I respectfully submit that there is probable cause to believe that **AHMON HOGG** and **SETH COLES-BODY** did knowingly and intentionally conspire to commit bank robbery, in violation of Title 18, United States Code, Sections 371 and 2113.

Nicholas Myers, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to by telephone, the Court hereby finds that there is probable cause to believe the Defendants committed the offense set forth in the Complaint.

Dated this ___2nd___ day of July, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

Complaint - 23
*United States v. Hogg, et al.*